UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA MARINE CLEANING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, through the DEPARTMENT OF THE NAVY,<br><br>Defendant. | Case No.:   22-cv-741-LAB-BLM<br><br>**ORDER**<br><br>**1) DENYING MOTION TO DISMISS, [Dkt. 9]; and**<br><br>**2) GRANTING IN PART AND DENYING IN PART REQUEST FOR JUDICIAL NOTICE, [Dkt. 12-1]** |

Plaintiff California Marine Cleaning, Inc. ("Cal Marine") sued the United States, through the Department of the Navy (the "Navy"), in connection with the July 2020 fire aboard the USS Bonhomme Richard ("BHR"), which at the time of the fire was pier-side at Naval Base San Diego. Cal Marine alleges that the Navy failed to take reasonable care in fire safety, prevention, and suppression aboard the ship, and is liable for damages stemming from its negligent actions. The suit invokes the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101, *et seq.*, and the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 30901, *et seq.*

The United States moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (the "Motion"), arguing that

because the dispute relates to the execution of a government contract, Cal Marine was required to exhaust its administrative remedies under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7102, prior to filing this suit, which the United States alleges it hasn't done. (Dkt. 9). Cal Marine opposes the Motion, arguing that because this case is based in tort, not contract, the CDA's exhaustion requirements don't apply, and this Court has federal question jurisdiction over Cal Marine's federal admiralty claims. (Dkt. 12). Cal Marine also filed a request for judicial notice in support of its opposition. (Dkt. 12-1).

## I. BACKGROUND

On September 4, 2018, the Naval Sea Systems Command awarded National Steel and Shipbuilding Co. ("NASSCO") a contract to perform repair work onboard the BHR. (*See* Dkt. 9-2). NASSCO, in turn, subcontracted part of the repair work—namely flushing, cleaning, and making gas-free tanks throughout the ship—to Cal Marine. (*See* Dkt. 9-8). This work was ongoing when, in July 2020, a fire broke out on the BHR, destroying some of Cal Marine's equipment and preventing it from completing the project. (Dkt. 1, Compl. ¶¶ 3, 42–44).

On October 18, 2021, the Navy's Major Fires Review released a report assessing the July 2020 fire and ultimately attributing the fire in part to several failures by the Navy to follow its own policies, including failing to exclude unauthorized individuals from entering the vessel, properly responding to the fire, adhering to fire safety standards, and properly handling and stowing hazardous and combustible materials. (*Id.* ¶ 19). The report also broadly discusses ineffective day-to-day training, insufficient oversight and accountability, and inconsistent attention and resourcing on pier-side fire safety and damage control readiness. (*Id.* ¶ 20). Following the fire, the Navy commenced disciplinary proceedings against multiple sailors, officers, and admirals. (*Id.* ¶ 21). Cal Marine's Complaint asserts three causes of action against the United States for negligence, ultrahazardous activity, and respondeat superior liability. (*Id.*

¶¶ 22–40). Cal Marine asserts these under the PVA and, in the alternative, under the SIAA. (*Id.* ¶ 1).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the grounds that the court lacks subject matter jurisdiction over a case. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). In resolving an attack on its jurisdiction, a court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the district court ultimately determines it has no jurisdiction over the subject matter, "the action should [be] dismissed, regardless of the parties' preference for an adjudication in federal court." *Morongo Band of Mission Indians*, 858 F.2d at 1380.

## III. ANALYSIS

### A. Statutory Framework

Under the SIAA, the United States' sovereign immunity is waived "in cases where 'a civil action in admiralty could be maintained' against a private person in the same situation." *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015) (quoting 46 U.S.C. § 30903(a)). The SIAA permits a party to bring a civil action in personam in admiralty against the United States where (1) the "vessel is owned by the United States or operated on its behalf," and (2) there is a "remedy cognizable in admiralty for the injury." *Id.* The SIAA "does not itself provide a cause of action. It

merely operates to waive the sovereign immunity of the United States in admiralty suits." *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 996 n.1 (9th Cir. 1997).

Like the SIAA, the PVA also provides for the statutory waiver of federal sovereign immunity in the admiralty context. The PVA applies to "civil action[s] in personam in admiralty . . . for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). The Ninth Circuit has interpreted the phrase "damages caused by a public vessel" broadly "to encompass *all* tort and contract claims 'arising out of the possession or operation of the ship.'" *Tobar v. United States*, 639 F.3d 1191, 1198 (9th Cir. 2011) (emphasis in original) (quoting *Thomason v. United States*, 184 F.2d 105, 107 (9th Cir. 1950)); *see Canadian Aviator, Ltd. v. United States,* 324 U.S. 215, 224 (1945) (holding "[t]he consent to suit embodied in the [PVA] thus extends to cases where the negligence of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargoes, and personnel"). "The [SIAA] and the subsequently adopted [PVA] are complementary jurisdictional statutes providing for admiralty suits against the United States." *Aliotti v. United States*, 221 F.2d 598, 602 (9th Cir. 1955). "[B]y virtue of their interrelated status, the SIAA and the PVA together provide original and exclusive admiralty jurisdiction in the United States district courts." *Guidry v. Durkin*, 834 F.2d 1465, 1472 (9th Cir. 1987) (internal citation and footnote omitted).

**B.   Admiralty Jurisdiction**

The United States argues that dismissal is appropriate here because, despite styling this as a tort case, Cal Marine's claims actually sound in contract, and as such, Cal Marine was required to first exhaust its administrative remedies pursuant to the CDA, 41 U.S.C. §§ 7101 *et seq*., before bringing suit in federal court. The United States represents that NASSCO submitted a Request for Equitable Adjustment ("REA") on Cal Marine's behalf to the Navy, and this claim

is still pending before the Navy's Contracting Officer. Cal Marine disputes this, stating that it doesn't have a REA claim with the Navy[1] and, contrary to the United States' characterizations, its claims are entirely based in admiralty tort, thus falling within the purview of this Court's jurisdiction. The Court agrees with Cal Marine.

      A plaintiff's "[t]ort claims may sound in admiralty jurisdiction if they satisfy a test with three components showing that the claim has the requisite maritime flavor." *Ali*, 780 F.3d at 1235 (citing *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 814 (9th Cir. 2002)). The relevant tort or harm must've "(1) taken place on navigable water (or a vessel on navigable water having caused an injury on land), (2) a potentially disruptive impact on maritime commerce, and (3) a substantial relationship to traditional maritime activity." *Id.* (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995) (internal quotations omitted)). Cal Marine's tort claims sound in admiralty jurisdiction because the fire occurred aboard the BHR while it was docked at the Naval Base San Diego undergoing repairs and maintenance, a fact that isn't disputed by either party. *See Sisson v. Ruby*, 497 U.S. 358, 367 (1990) (finding a fire that erupted on a yacht during the storage and maintenance of such a vessel on navigable waters is related to maritime activity). As in *Sisson*, Cal Marine has satisfied all three requirements for admiralty jurisdiction: (1) the fire occurred aboard the BHR while it was docked at Naval Base San Diego, (2) the fire had a potentially disruptive impact on maritime commerce by spreading to nearby vessels or making the marina inaccessible while the fire was being contained and extinguished over four days, and (3) maintenance or repairs of a vessel at a marina on navigable waters is related to maritime activity.

//

---

[1] NASSCO filed an REA claim, but Cal Marine has requested any claim involving relief for its damages be withdrawn. (*See* Dkt. 12-3 ¶ 3, Ex. 3).

### 1. Applicability of CDA

A plaintiff "may not avoid the jurisdictional bar of the CDA merely by alleging his contract dispute in the language of tort." *See Mendenhall v. Kusicko*, 857 F.2d 1378, 1379 (9th Cir. 1988). The United States argues that Cal Marine's tort claims arose from and relate to a contract between the Navy and NASSCO, which NASSCO then individually subcontracted to Cal Marine. According to the Government, this limits the waiver of immunity in the PVA and SIAA. (Dkt. 9 at 15). The Government contends, "the SAA and PVA provide general waivers of sovereign immunity in maritime cases such as this, but because the losses in this case relate to performance under a government contract, the more specific waiver of sovereign immunity in the CDA applies." (*Id.* at 16). The Court disagrees with this position, and finds the case law cited in support of this proposition unpersuasive.

Specifically, the United States quotes *Southwest Marine, Inc. v. United States* for the proposition that the CDA "has been carefully drafted to give jurisdiction to federal district courts after the administrative remedies mandated by the CDA have been exhausted. . . . Then, and only then, can the contractor file suit in federal district court if the CDA claim arises out of a maritime contract." 926 F. Supp. 142, 144 (N.D. Cal. 1995). *Southwest Marine* is distinguishable because it involved only claims for breach of government procurement contracts that were subject to the CDA. *Id.* at 143. The Ninth Circuit has rejected the conclusion "the CDA provides the exclusive basis for litigation of claims relating to government contracts." *Wright v. U.S. Postal Serv.*, 29 F.3d 1426, 1428 (9th Cir. 1994). So long as there is another statute that provides an independent grant of jurisdiction to the district courts, the CDA doesn't preempt a subcontractor from bringing its action under that other statute, even where the contracts at issue are within the scope of the CDA. *Id.* at 1430. Here, Cal Marine brings maritime tort claims that

provide an independent basis for jurisdiction.[2]

Although NASSCO can't sue the United States directly for contract claims until it exhausts its remedies provided by the CDA, this doesn't preclude Cal Marine from bringing its maritime tort claims. The United States relies on *Eastern, Inc. v. Shelley's of Delaware, Inc.*, 721 F. Supp. 649 (D.N.J. 1989), for the proposition that subcontractors can't access district courts when the CDA preempts contractors from bringing its contract disputes to district courts. (Dkt. 9 at 12). In *Eastern,* the plaintiff alleged breach of contract, among other claims, and argued that as an unpaid subcontractor it held an interest in the contract balance owed by the U.S. Postal Service to Shelley's and/or its sureties. 721 F. Supp. at 650. Unlike the plaintiff in *Eastern*, Cal Marine hasn't alleged any breach of contract claims against the Navy that would require it to adhere to the CDA first to exhaust its administrative remedies or wait for NASSCO to sponsor its claims.

The United States also points to *Shaver Transportation Co. v. United States*, which states that "the CDA not only applies to PVA and SAA cases, but supersedes those statutes when their terms conflict." 948 F. Supp. 2d 1193, 1199 (D. Or. 2013). However, unlike in this case, the plaintiff in *Shaver*, a subcontractor, brought a breach of contract claim against the United States in district court without first proceeding through the administrative remedies of the CDA. *See id.* The court in *Shaver* reasoned: (1) exhaustion of administrative remedies was a prerequisite to its jurisdiction over contract claims brought under the CDA; (2) as a subcontractor lacking privity with the United States, plaintiff was unable to pursue the CDA's administrative remedies; and (3) therefore the court lacked

---

[2] The United States also argues the "Exhaustion Doctrine" serves three main purposes that promote judicial economy. (Dkt. 9 at 9–10). One benefit is that the Navy may settle all claims through the REA process, thereby avoiding the time and expense of costly litigation. However, if the Navy was going to settle the claims, there is no reason why it can't settle with Cal Marine through the litigation process.

1  jurisdiction. *See id.* at 1201–02. Importantly, the *Shaver* court also mentions "the CDA is not necessarily 'the exclusive basis for litigation of claims relating to government contracts' before the U.S. District Courts. . . . [E]quitable claims related to government contracts can be entertained in the district courts (rather than in the U.S. Court of Federal Claims) as long as there is an independent basis for jurisdiction separate from the CDA." *Id.* at 1201 (internal citation omitted).

Cal Marine hasn't claimed any contractual right or obligation. In fact, it doesn't have a contract with the Navy. Absent a contract between the United States and Cal Marine, officials who administer CDA claims don't have jurisdiction over any claims brought by Cal Marine directly. *NavCom Def. Elecs., Inc. v. Ball Corp.*, 92 F.3d 877, 879 (9th Cir.1996) (holding "contracting officers have jurisdiction only over claims by contractors against the government, not over claims brought directly by subcontractors"). Instead, the Complaint refers to common law negligence principles as a source of rights. Negligence, strict liability based on ultrahazardous activity, and respondeat superior all lie outside of contract law, rendering the CDA inapplicable to Cal Marine's tort claims.

### 2.    Claims Arising During Performance of a Contract

The duty to exercise reasonable care to prevent risks of harm to others is based upon tort law. *See Rayonier Inc. v. United States*, 352 U.S. 315, 319–20 (1957); *see also* Restatement (Third) of Torts: Phys. and Emot. Harm § 7 (2010). The United States argues that while there isn't privity of contract between the Navy and Cal Marine, the dispute arises from and relates to the BHR contract because the contract "imposes a duty on both the government and the contractor to protect the vessel from fire." (Dkt. 9 at 17). However, the fact that a contract requires specified safety precautions doesn't negate liability for a tort claim where the contractor fails to follow those specifications. *See Rooney v. United States*, 634 F.2d 1238, 1244 (9th Cir. 1980).

The United States also argues that Cal Marine equipment was present on

the ship only due to contractual relations. While true, this doesn't affect the tortious nature of the claim. That the alleged tort occurred in the context of contractual relationships doesn't per se render the claim contractual in nature. *Aleutco Corp. v. United States*, 244 F.2d 674, 679 (3d Cir. 1957) (holding court had jurisdiction where elements of both contract and tort were involved in the claim) (internal citations omitted). Access to federal courts shouldn't be denied to a plaintiff "who pleads and proves a classic in tort" because this would go against Congress' intent to waive the United States' sovereign immunity in certain cases. *Id.*

Finally, the United States points to the Defense Financial Acquisition Regulation ("DFAR") provisions incorporated into Cal Marine's contract with the prime contractor, NASSCO, which states that the parties agreed to settle all disputes through the CDA process. DFAR 252.243-7002 lays out the proper procedure for requests for equitable adjustment of contract pricing changes. (Dkt. 9-22 at 14). DFAR 5252.233-9103 further delineates the required information for any CDA administrative remedy filed in relation to "any other act or omission to act on the part of the Government." (*Id.* at 8). The most natural reading of these regulations is that they extend requirements about what information should be included in CDA administrative claims to all such claims and prohibit contractors from withholding any relevant information on the basis that the request didn't relate to a "change order" or an engineering change. The United States denies otherwise applicable tort relief against the Government to all subcontractors, but these DFAR regulations shouldn't be read to radically alter tort liability or sovereign immunity across the vast web of government contracts.

None of the cases cited by the government indicate that an otherwise well-plead tort claim brought by a subcontractor against the United States must first exhaust the CDA's administrative remedies for contractual disputes. Nor is there any clear indication by Congress that the CDA should limit the United States' traditional maritime tort liability. In fact, there is *no* reference to tort in the CDA.

The only reference to maritime affairs in the CDA is a provision, 41 U.S.C. § 7102(d), stating district courts have jurisdiction over appeals from the administrative remedy for maritime contracts. If anything, the statute indicates deference to district court jurisdiction over claims in admiralty. Because this Court has jurisdiction over Cal Marine's admiralty tort claims, the United States' Motion is **DENIED**.

## IV. REQUEST FOR JUDICIAL NOTICE

Courts may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determine from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice may include legislative documents and publicly accessible websites. *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010). Cal Marine's request is **GRANTED IN PART** as to the following facts: (1) the USS BHR is a vessel owned by the United States; (2) a fire occurred on the BHR in July 2020; (3) damages were caused by the fire; and (4) the BHR was in navigable waters at the time of the fire in July 2020. (Dkt. 12-1 ¶¶ 1–4). Although the United States objects to Cal Marine's request for judicial notice, it doesn't contest that a fire occurred on the BHR in July 2020 at Naval Base San Diego, (Dkt. 4 ¶ 3), and damages were caused by the fire, (Dkt. 9 at 5). Cal Marine's request is **DENIED IN PART AS MOOT** as to the remaining facts as those facts are irrelevant to the determination of subject matter jurisdiction.[3]

---

[3] Although Cal Marine requests the Court take judicial notice of the United States' admittance of subject matter jurisdiction, a party can't forfeit or waive subject matter jurisdiction because it involves a court's power to hear a case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *United States v. Cotton*, 535 U.S. 625, 630 (2002).

## V. CONCLUSION

The United States' motion to dismiss for lack of subject matter jurisdiction is **DENIED**. (Dkt. 9). The Court **GRANTS IN PART** and **DENIES IN PART** Cal Marine's request for judicial notice. (Dkt. 12-1).

**IT IS SO ORDERED**.

Dated: July 26, 2023

**Honorable Larry Alan Burns**
United States District Judge