**WALT PENNINGTON SBN 214470**
Pennington Law Firm
3304 30th Street
San Diego, CA 92104-4535
619 940 6157
wpennington@pennfirm.com
*Attorney for California Marine Cleaning, Inc., Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| CALIFORNIA MARINE CLEANING, INC. Plaintiff, v. UNITED STATES OF AMERICA Defendant. | Case No. 3:22-cv-00741-JO-BLM<br><br>PLAINTIFF CALIFORNIA MARINE CLEANING'S REQUEST FOR JUDICIAL NOTICE<br><br>Judge:  Jinsook Ohta |
|---|---|

Plaintiff California Marine Cleaning, Inc. through its attorney, hereby requests the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following facts:

**ECF 52-7 Req. Jud. Notice 6, 435 pages**. Government's Fire Report. Command Investigation into the Fire Aboard USS Bonhomme Richard (LH-6), 12 July 2020.

    a. Judicial notice of the report in its entirety concerning the standards for fire prevention, the failure to adhere to those standards.

    b. The five and one-half page executive summary beginning on page 20 of 435.

    c. Page 20 of 435. 138 sailors on the ship. 115 were on duty. After smoke was detected, 10 minutes elapsed Duty section used mobile phones because radios

were not available. FEDFIRE arrives at 8:30 a.m. and meets with the CDO (Command Duty Officer.) Lack of direction from the BHR's force concerning firefighting led FEDFIRE to operate as an independent unit. It was inefficient because FEDFIRE did not know to use the closest entrance to the fire.

    d. Page 21 of 435. Lack of compatible radios between SDFD and FEDFIRE. No attempt by the commanding officer or the Command Duty Officer (CDO) to integrate with the local fire fighters. Because of the repairs, BHR had aqueous film forming foam ("AFFF") but these systems were not used to fight the fire because they were degraded, maintenance had not been properly performed, the systems were degraded and the crew did not sufficiently know how to use AFFF. BHR loaded 900,000 gallons of fuel and was required to restore shipboard firefighting systems. Chief Duty officer turned off power that rendered the AFFF and the ship's fire main unusable.

    e. Page 22 of 435. At 10:50 an explosion "rocked the ship." "Throughout the first day of efforts, fire suppressing agent was never applied to the seat of the fire, and the opportunity to do so was lost once the fire spread beyond the perimeter of Lower V and across the entire ship. Temperature exceeded 1,200 F and melted interiors. "CO, XO, CMC, CHENG and DCA were all present on the pier prior to the explosion, they failed to establish command and control of the situation and did not lead action to integrate fire response efforts." " The overall command and control for the fire response was initially chaotic, but it improved over time through ad hoc decisions and assignments. Although the CO, XO, CMC, CHENG, and DCA were all present on the pier prior to the explosion, they failed to establish command and control of the situation and did not lead action to integrate fire response efforts. Instead, Commander, Expeditionary Strike Group THREE (ESG-3), the ship's operational Commander who has no assigned role or responsibility in response to a shipboard fire during a maintenance availability, stepped into a command and control vacuum to align the various ship, installation,

Plaintiff California Marine Cleaning's Request for Judicial Notice

and external organizations by employing a make-shift emergency response organizational structure. This rapidly-formed command structure enabled coordinated action, and by the fifth day, the fire was declared out. The fire was extinguished due to five days of firefighting efforts coupled with the limited amount of combustibles remaining onboard that had not previously burned. The fire left the ship damaged beyond economical repair, leading to the decision to decommission BONHOMME RICHARD.

f. Page 24 of 435. 8010 Manual recommendations not implemented. "For the BONHOMME RICHARD availability, however, many of the requirements developed and codified in the 8010 Manual were not properly executed – to include the functions of the Fire Safety Council as a means to manage the accumulation of risk and the Chapter 12 and 13 drills that were designed to enable a coordinated response to a shipboard fire during a maintenance period."

g. Page 25 of 435. The lack of consistent maintenance placed the Surface Fleet on a "trajectory of an unacceptable fire prevention and response posture with a high level of accumulated risk before the fire started on 12 July 2020.

h. Page 28. FRB = Failure Review Board; DC = Damage Control. Pre-fire investigation team. Post-fire investigation team. Minimum number of authorized duty sections. Pier lay down and equipment was missing.

i. Page 29. 8010 Manual is the key policy document that sets requirements relating to the prevention of, detection of, and response to fires aboard Navy vessels during industrial work to ensure safety of equipment and personnel.

j. Page 29. OPNAVINST 3440.18. This regulation provides responsibilities and response procedures and reporting requirements for major shipboard non-nuclear casualties.

k. Page 32. Findings of Fact. Findings of fact are based on more likely than not standard. "ATF determined that once the fire ignited, it spread to the significant amount of combustible. material stored within Lower V (See Figure 1),

which included dozens of tri-walls filled with gear and equipment and three fueled vehicles (a forklift, a man-lift, and a cargo tractor)."

l. The findings of fact authored by Admiral Scott Conn for the United States' Navy from pages 32 to 264.

m. The opinions concerning the fire in Chapter 3 from pages 265 to 322.

**ECF 52-8 Req. Jud. Notice 7, 61 pages** Major Fires Review. Executive Summary.

**ECF 25-1, Exhibit 1 (pages 3 and 4), Req. Jud. Notice 3.** Emails between counsel concerning the REA. Government's counsel Kyle Fralick admitted that Defendant's agency adjudicated and paid NASSCO's REA.

> My client told me that the government agreed to pay the prime contractor on its request for equitable adjustment. Can you please confirm if your client made a decision on NASSCO's request for equitable adjustment? If there has been a determination, can you please provide that determination to me?

(Email from Walt Pennington dated June 22, 2023, ECF 25-1, Exhibit 1).

> We can confirm the Navy settled the REAs. Please let us know if Cal Marine decides to pursue again the administrative remedy available to it.

(Email from Kyle Fralick dated June 23, 2023, ECF 25-1, Exhibit 1).

April 8, 2024

s/ Walt Pennington SBN 214470
Pennington Law Firm
3304 30th Street
San Diego, CA 92104-4535
619 940 6157
wpennington@pennfirm.com
*Attorney for California Marine Cleaning, Inc., Plaintiff*